IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MARIA BENTLEY, CB3, WARREN MOSLER, CHRIS HANLEY, AND CHRISMOS CAN BAY, LLC., <br><br> Defendants/Petitioners, <br><br> v. <br><br> JOSEPH GERACE, VICTORIA VOOYS D/B/A CANE BAY BEACH BAR, <br><br> Plaintiffs/Respondents. | CASE NO. 16-3912 |

**RESPONDENTS' PETITION FOR INITIAL HEARING *EN BANC*
TO DETERMINE THIS COURT'S SUBJECT-MATTER JURISDICTION**

**I.    INTRODUCTION**

Respondents/Plaintiffs Joseph Gerace and Victoria Vooys, d/b/a Cane Bay Beach Bar request that this Court initially consider *en banc* whether the Third Circuit Court of Appeals has jurisdiction over this Petition for Writ of *Certiorari*. This Court's panel decision in *United Indus., Serv., Trans., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex. rel. Bason v. Gov't of the Virgin Islands*, 767 F.3d 193 (3d Cir. 2014) conflicts with the U.S. Supreme Court case of *Slack v. McDaniel*, 529 U.S. 473 (2000) and the Ninth Circuit case of *Santos v. Guam*, 436 F.3d 1051

1

(9th Cir. 2006). *En banc* consideration is necessary *both* to secure or maintain uniformity of the court's decisions *and* because the proceeding involves a question of exceptional importance. This issue meets the requirements of Third Circuit Internal Operating Procedure 9.2, in that the jurisdictional issue, if not determined to be *dictum*, is controlled by a prior decision of the court which should be reconsidered. The case is of such immediate importance that exigent circumstances require initial consideration by the full court. The *Bason* decision is impacting the integrity of the Virgin Islands Court system and the respect Congress intended to bestow on the Virgin Islands Supreme Court as an institution that is to be co-equal with other territorial and state supreme courts. In March 2017, Governor Mapp—after a unanimous legislative confirmation vote—swore in Justices Hodge, Swan, and Cabret to second terms, demonstrating the overall approval of the work the Court is doing on behalf of the People of the Virgin Islands.[1] Maintaining *certiorari* jurisdiction over the Virgin Islands Supreme Court diminishes a source of local pride in an important local, post-colonial institution. Maintaining *certiorari* jurisdiction also contributes to the severe case backlog and confusion in the lower courts. Respondents respectfully request that the Court accept this issue *en banc* to correct

---

[1] *See, e.g.*, http://governormapp.com/news/2017/03/supreme-court-justices-sworn-second-term/ ("Governor Kenneth E. Mapp said he was proud to host the ceremony at Government House, adding that in nominating the Justices for re-appointment to the Supreme Court, he was "motivated by the good and high quality of work on behalf of the people of the Virgin Islands."); *see also* http://viconsortium.com/featured/v-i-supreme-court-justices-vested-for-second-term/.

the *Bason* panel's decision and order this petition dismissed for lack of subject-matter jurisdiction.

Respondents note that in *Fahie v. Virgin Islands*,[2] another panel of this Court recently determined that *Bason's* jurisdictional holding was binding authority in this Circuit. Importantly, the *Fahie* panel did not reaffirm the *Bason* panel or indicate that it agreed with it. It held that, "[n]o matter how we might now view *Bason*, however, the Bar Association is mistaken about our "complete freedom[ to depart from *Bason*.]"[3] "That ruling was not merely non-binding *dicta*, and it remains the law in our Circuit."[4] Respondents contend that the *Fahie* opinion itself is inconsistent with the 2009 panel of *U.S. v. Tann*, which held that, a "panel of our Court may decline to follow a prior decision of our Court [if it conflicts with Supreme Court precedent] without the necessity of an *en banc* decision whether the conflicting Supreme Court decision was rendered before or after our prior decision."[5]

---

[2] *See Fahie v. Virgin Islands*, 2017 WL 2260965, at *5, __ F.3d __ (3d Cir. May 24, 2017).

[3] *See id.*

[4] *See id*.

[5] *See U.S. v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009).

## II. ARGUMENT

The party seeking a writ of *certiorari* has the burden of establishing subject-matter jurisdiction.[6] Here, Petitioners contend that this Court has jurisdiction solely through 48 U.S.C. § 1613 (2012), which was amended in 2012 to remove this Court's *certiorari* jurisdiction over the Virgin Islands Supreme Court.

**A. To the extent the *Bason* panel's jurisdictional determination is not deemed *dictum*, the issue is controlled by the *Bason* panel decision, which erroneously concluded that this Court has *certiorari* jurisdiction over the V.I. Supreme Court after Congress stripped this Court's *certiorari* jurisdiction.**

On December 28, 2012, the President of the United States signed into law H.R. 6116, Pub. L. 112-226 (2012), which eliminated the *certiorari* jurisdiction of this over decisions of the V.I. Supreme Court and replaced it with direct review by the United States Supreme Court.[7] Section 3 of H.R. 6116, entitled "Effective Date," provides that "[t]he amendments made by this Act apply to cases commenced on or after the date of the enactment of this Act," *i.e.*, December 28, 2012. In *United Indus., Serv., Trans., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex. rel. Bason v. Gov't of the Virgin Islands*, in *dictum*, a panel of this Court indicated that H.R. 6116—which dealt exclusively with appellate jurisdiction—did not eliminate jurisdiction over any case that had already commenced in the *Superior*

---

[6] *See* L.A.R. 112.6(a)(3).

[7] *See, e.g.,* 48 U.S.C. § 1613 (2016).

4

*Court* (the trial court) as of that date, as opposed to being commenced in the relevant appellate courts such as the V.I. Supreme Court under, for example, 4 V.I.C. § 32 or V.I.S.CT.R. 4, or by filing a Petition for writ of *certiorari* with the Third Circuit under the pre-amended 42 U.S.C. § 1613.[8] Although Respondents agree with the Brief of the *Amicus Curiae* V.I. Bar Association filed in Case No. 152721, filed June 26, 2016, ECF Doc. 003112336903, that the *Bason* opinion on H.R. 6116 was a non-binding advisory opinion and should be revisited;[9] nevertheless, Respondents contend that the *Bason* opinion should be revisited *en banc* under Federal Rule of Appellate Procedure 35.[10]

Section 3 of H.R. 6116, entitled "Effective Date," provides that "[t]he amendments made by this Act apply to *cases commenced* on or after the date of the enactment of this Act," *i.e.*, December 28, 2012. The *Bason* panel concluded that "cases commenced" referred to any case *filed in Superior Court*—the trial court—before the effective date. The *Bason* panel's construction of "cases commenced" as meaning the date of the original action in the trial court is inconsistent with the U.S. Supreme Court's decision in *Slack v. McDaniel*.[11]

---

[8] *See United Indus., Serv., Trans., Prof'l & Gov't Workers of N. Am. Seafarers Int'l Union ex. rel. Bason v. Gov't of the Virgin Islands*, 767 F.3d 193, 210 (3d Cir. 2014).

[9] Respondents join in that Brief to the extent permissible under FED. R. APP. P. 28(i).

[10] Respondents are filing a timely petition under FED. R. APP. P. 35 for hearing of the jurisdictional issue *en banc*.

[11] *See Slack v. McDaniel*, 529 U.S. 473, 482 (2000).

In *Slack*, the U.S. Supreme Court expressly held that when the application of a statute is triggered by the commencement of a case, the relevant "case" for a statute directed to the court of appeals is the one initiated in the appellate court.[12] H.R. 6116 is directed to the appellate courts and is triggered by the commencement of a case, therefore, *Slack* unequivocally and unambiguously controls the interpretation of H.R. 6116.[13] The Supreme Court held:

> While an appeal is a continuation of the litigation started in the trial court, it is a distinct step. We have described proceedings in the courts of appeals as "appellate cases." Under AEDPA, an appellate case is commenced when the application for a COA is filed. ***When Congress instructs us (as Lindh says it has) that application of a statute is triggered by the commencement of a case, the relevant case for a statute directed to appeals is the one initiated in the appellate court***.[14]

Congress is presumed to be familiar with existing case law like *Slack* when it legislates.[15] Moreover, no other territorial-court-review statute has been interpreted contrary to *Slack* or consistent with *Bason* that Respondents are aware of. All previous appellate-jurisdiction transfer statutes excluded from immediate transfer—at most—pending appeals already filed with the appellate court and did not attempt to exclude from immediate transfer appeals from the trial court that could be filed at some unknown time in the future. For example, Congress specified that the First

---

[12] *See id.*

[13] *See id.*

[14] *See id.* (citations omitted and emphasis added).

[15] *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979).

Circuit would retain jurisdiction only over appeals already taken, not cases commenced at the trial court level, when it provided for direct review of Puerto Supreme Court decisions by the U.S. Supreme Court.[16] When Congress divested the District Court of the Virgin Islands from appellate jurisdiction over appeals taken from the Superior Court, it stated that the District Court would retain jurisdiction only over those appeals then pending before it.[17] Yet when Congress did not specify a "cases commenced" savings claims with *Guam*, in *Santos v. Guam*, the Ninth Circuit determined that Congress intended for an immediate transfer of jurisdiction from the Ninth Circuit Court to the United States Supreme Court, even in those cases already fully briefed, argued, and simply awaiting issuance of a decision.[18] In other words, the debate is generally between whether, on the effective date of the statute, that pending appeals are saved, or whether appellate jurisdiction is simply extinguished, *not whether cases might be appealed to the jurisdictionally-stripped appellate court dozens of years later*.

The *Bason* panel attempted to distinguish cases like *Slack* and *Santos* by pointing to *Hamden v. Rumsfeld*.[19] *Hamden* does not support the *Bason* panel's decision because it was a *habeas corpus* case related to the unique situation of the

---

[16] *See* Pub. Law No. 87-189, § 3.

[17] *See* 48 U.S.C. § 1613a(d).

[18] *See Santos v. Guam*, 436 F.3d 1051, 1053 (9th Cir. 2006).

[19] *See Hamden v. Rumsfeld*, 548 U.S. 557 (2006).

7

detainees held in Guantanamo Bay, Cuba.[20] In *Hamden*, the Supreme Court refused to apply a jurisdiction-stripping subsection of a statute retroactively to cases pending in any court, including itself, which would have deprived jurisdiction over a case *to any court at all*.[21] It based its decision on the inference that Congress did not intend to destroy jurisdiction over pending cases where the statute was silent about whether the jurisdiction-stripping provision applied to the pending cases, while other subsections of the same statute included express retroactivity language that applied to pending cases. By doing so, the Supreme Court avoided other constitutional problems with the statute—like the absolute denial of all *habeas* rights to detainees held in military tribunals—though this construction.[22] *Hamden* itself expressly distinguished cases—like this one—where there was simply change in which court that was to hear the case on appeal, which does not implicate "retroactivity" that destroys substantive rights.

Unlike the statute at issue on *Hamden*, H.R. 6116 is not a jurisdiction-stripping statute designed to deprive *all courts in general* from having jurisdiction

---

[20] *See id* at 575.

[21] *See id*. at 578.

[22] *See id*. ("We have explained, however, that, unlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' If that is truly all the statute does, no retroactivity problem arises because the change in the law does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." [citations omitted].).

over a *habeas corpus* case to deny detainees access to constitutionally guaranteed *habeas corpus* rights. H.R. 6116 is a jurisdiction-shifting statute that does not implicate substantive rights, *i.e.*, H.R. 6116 simply shifts *certiorari* jurisdiction from the Third Circuit to the U.S. Supreme Court. This Court should presume that the U.S. Supreme Court is a constitutionally adequate body to protect the rights of Virgin Islands litigants through its own *certiorari* jurisdiction. Moreover, and importantly, the statute at issue in *Hamden* was directed specifically to cases initiated in the trial courts, not specifically to appellate cases, and was silent as to whether it applied to cases that had already been commenced, which harmonizes its holding with *Slack*.

Moreover, the *Bason* panel failed to adequately address the subsequent U.S. Supreme Court case of *Limitaco v. Camacho*,[23] which implicitly affirmed the Ninth Circuit's holding that the statute changing *certiorari* jurisdiction from the Ninth Circuit to the U.S. Supreme Court impacted even pending appeals by accepting *certiorari* jurisdiction after the Ninth Circuit dismissed for lack of subject matter jurisdiction.[24] Like *Hamden*, the statute lacked an express savings clause for pending cases. Had the U.S. Supreme Court believed that *Hamden* overruled the Ninth Circuit's decision in *Santos*, it would not have accepted jurisdiction over the

---

[23] *See Limitaco v. Camacho*, 549 U.S. 483 (2007).

[24] *See id.* at 487-88.

*Limtiaco certiorari* petition, but instead remanded the matter to the Ninth Circuit for disposition on the merits.

The legislative history of the statute also shows that Congress intended for H.R. 6116 to apply to all cases not already commenced in the Third Circuit by December 28, 2012, to bring the V.I. Supreme Court on par with courts of last resort of the 50 states, the District of Colombia, Guam, and the other territories. Representative Howard Coble, the Chair of the Committee on the Judiciary's Subcommittee on Courts, Commercial and Administrative Law, to which H.R. 6116 had been conferred, stated that "H.R. 6116 adopts the third circuit's recommendation" and "simply authorizes the U.S. Supreme Court to review, at its discretion, all final judgments rendered by the Virgin Islands Supreme Court."[25] Representative Robert Scott likewise stated that "this bill simply implements the recommendation of the third circuit judicial counsel" and that "H.R. 6116 effectuates the third circuit's recommendations by deleting from the Revised Organic Act both the provisions granting appellate jurisdiction to the third circuit and the reporting requirement."[26] Representative Scott further stated that the drafters of H.R. 6116 had received "input . . . from the U.S. Supreme Court" and had slightly altered the bill in response to that institution's comments, and indicated that the bill was

---

[25] *See* 158 CONG. REC. H6363 (statement of Rep. Coble.).

[26] *See id.* (statement of Rep. Scott).

intended to provide for direct review in the same manner provided to the Guam Supreme Court.[27] Delegate Donna Christensen, the sponsor of H.R. 6116, stated that the purpose of the bill was to "[m]ake the Virgin Islands Supreme Court just like every other high court in the United States and territories."[28] Finally, Delegate Eni Faleomavaega also stated that H.R. 6116, "simply puts into legislation a decision vetted by the judicial counsel of the third circuit."[29]

As described by these members of Congress, the Third Circuit Judicial Council Report recommended that Congress "consider legislation providing that the Supreme Court of the Virgin Islands enjoy the same relationship with the Supreme Court of the United States as do the highest courts of the several States," and at no point recommended that the Third Circuit retain *certiorari* jurisdiction over any subset of cases.[30] No other territorial court of last resort is currently subject to the *certiorari* jurisdiction of a federal court of appeals, and none of these other courts were treated with—frankly—such disrespect when Congress determined that they were ready to take their seats as the highest local court in their respective jurisdictions. When the Subcommittee Chair, sponsor, and other supporters of

---

[27] *See id.*

[28] *See* 158 Cong. Rec. H6354 (statement of Del. Christensen).

[29] *See* 158 Cong. Rec. H6355 (statement of Del. Faleomavaega).

[30] Report of the Judicial Counsel of the United States Court of Appeals for the Third Circuit on the Virgin Islands Supreme Court, reprinted on the V.I. Supreme Court's website.

11

H.R. 6116 stated that the purpose of the bill was to implement the Report's recommendations by making the V.I. Supreme Court like every other state or territorial court, there is no question that they intended for the U.S. Supreme Court to exercise *certiorari* jurisdiction over all *certiorari* petitions filed after the effective date of the bill and other proceedings not yet filed.

The *Bason* panel also failed to acknowledge that the U.S. Supreme Court assisted in drafting H.R. 6116. When the U.S. Supreme Court revises its own rules, and provides that they "shall govern in all cases commenced after that date," the U.S. Supreme Court does not look to the date the complaint was filed in district court to determine whether a new U.S. Supreme Court Rule applies.[31] The 2016 amendments to the appellate rules are also going to apply to all "appellate cases commenced" after the effective date of the rules change, regardless of when the case was commenced in District Court.[32] Thus, both the Supreme Court's rules the Federal Rules of Appellate Procedure apply to all appellate cases commenced after their effective date, regardless of when the case was commenced at the trial court level.

---

[31] *See, e.g., Zatco v. California*, 502 U.S. 16, 17 (1991) (applying amended Rule 39 to case that had been pending in the lower court before the effective date of the amendment).

[32] *See, e.g.*, http://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments.

**B.     The case is of such immediate importance that exigent circumstances require initial consideration by the full court.**

Should the Third Circuit continue to follow the *Bason* rule and exercise jurisdiction over cases with an initial civil or criminal complaint filed on or before December 28, 2012, its jurisdiction will seemingly continue indefinitely on an *ad hoc* basis of appeals on delayed cases in the trial court. Such a result is in contravention of the very purpose of the law and will permit the Third Circuit to enter opinions on old trial court cases—but long delayed in the trial court—which may contradict opinions issued in newer, non-delayed trial court cases. This is a major practical problem because it will further delay final decisions on very old cases and create confusion in the Superior Court. There is an *extraordinary* number of pre-December 28, 2012 cases in the Virgin Islands (like this one) that would potentially remain subject to Third Circuit *certiorari* review for a period extending far beyond the contemplation of Congress and, for that matter, far beyond any period likely contemplated by the *Bason* panel.

At present, the Superior Court has long delays in reaching a final determination on its cases. The V.I. Bar Association reported in its *Amicus* Brief that, on average, it takes nearly 10 years for a case to make it to trial in Superior Court. Given this lengthy timeline to bring a case to trial, an enormous backlog of cases has been created. It also reported that in 2014, there were over 6,000 cases pending in Superior Court, without counting traffic cases or marriages. In 2014, 401

new civil cases were filed, but only 280 cases were resolved, so the backlog is getting worse, not better. This case is a prime example.

Given the magnitude of the backlog problem, it is likely that final judgments in certain civil cases will not be entered until more than 15 years after the complaint was filed. Prior to H.R. 6116, 48 U.S.C. § 1613 stated that the Third Circuit would automatically lose *certiorari* jurisdiction over all cases upon the passage of 15 years following the establishment of the V.I. Supreme Court, *i.e.*, January 28, 2022, at the latest. However, under *Bason's* interpretation of the "cases commenced" language, it is likely that a significant number of cases will still be under its *certiorari* jurisdiction even after the old automatic expiration date. Under this approach, no mechanism exists to timely end Third Circuit oversight, which is an absurd result given that the purpose of H.R. 6116 is to terminate oversight *immediately* upon its passage, except for pending appeals.

Should the Third Circuit continue to apply the *Bason* rule, the administration of justice in the Virgin Islands will be undermined. The V.I. Supreme Court concurrently hears appeals in cases where the complaints were filed before and after December 28, 2012. Thus, the V.I. Supreme Court will potentially issue opinions involving the same issue of both local and federal law in cases where the trial court complaint was filed prior to and after December 28, 2012. In fact, the judges of the Superior Court are already confused as to whether they are bound to follow Third

Circuit or V.I. Supreme Court precedent depending on when the case was filed,[33] and this Court is now actually asking the V.I. Supreme Court for guidance about local law.[34] The purpose of H.R. 6116 was unquestionably to establish the V.I. Supreme Court as the final arbiter of local law and as a co-equal court among the state's highest courts. As it stands now, however, there is confusion and uncertainty on this essential point because of *Bason.*

Additionally, and anomalously, the V.I. Supreme Court is not bound to even follow this federal circuit on matters of federal law with respect to cases filed after December 28, 2012, and can, legitimately, reject specific Third Circuit precedent in favor of its own views on federal law. Even under the *Bason* rule, the V.I. Supreme Court may validly overrule (or at least reject) Third Circuit precedent on matters of federal law with respect to cases filed after December 28, 2012.[35] This situation is untenable and leads to confusion about each respective court's authority, but this is the situation that exists under the current *Bason* scheme. And relevant to this case,

---

[33] *Compare Hodge v. V.I. Telephone Corp.*, 2014 WL 1508493, at *3 (V.I. Super. Ct. Apr. 11, 2014) *with Petersen v. Golden Orange Centers, Inc.*, 2014 WL 7525517, at *2 & n.2 (V.I. Super. Ct. Sep. 25, 2014).

[34] *See, e.g.*, *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 299 (3d Cir. 2012).

[35] *See, e.g.*, *Johnson v. Williams*, 133 S. Ct. 1088, 1098 (2013); *see also State v. Montano*, 77 P.3d 1246, 1247 n. 1 (Ariz. 2003); *People v. Dunlap*, 975 P.2d 723, 748 (Colo. 1999); *Stratos v. Dep't of Pub. Welfare*, 439 N.E.2d 778, 786 n.8 (Mass. 1982); *Cash Distributing Co. v. Neely*, 947 So.2d 286, 294 (Miss. 2007); *State v. Robinson*, 82 P.3d 27, 30 (Mont. 2003); *Lincoln Elec. Sys. v. Neb. Pub. Serv. Comm'n*, 655 N.W.2d 363, 371 (Neb. 2003); *State v. Gaitan*, 37 A.3d 1089, 1118 (N.J. 2012); *Commonwealth v. Cross*, 726 A.2d 333, 338 & n.4 (Pa. 1999); *Lundborg v. Keystone Shipping Co.*, 981 P.2d 854, 862-63 (Wash. 1999).

if the cost-bond statute is attacked as unconstitutional in a post-December 28, 2012 case, the V.I. Supreme Court would be *completely free to disagree with any contrary decision from this Court on the same issue*, even if this Court issues a contrary opinion in this case, potentially making the statute unconstitutional for some local cases and not others, *leading to even more equal-protection problems*. It is obviously preferable to leave constitutional-error correction, if any, on this local statute to the U.S. Supreme Court, as Congress intended. Respondents request that this Court, to effectuate the intent of Congress, and in the interest of Comity and respect for the V.I. Supreme Court's rightful place as the highest court in the territory, revisit *Bason en banc* and interpret the statute consistent with *Slack*'s mandate. In short, this critically important structural issue adversely impacts the overall administration of justice in the Territory and needs to be corrected as soon as possible to avoid its impact on all local cases.

### III. CONCLUSION AND PRAYER

Respondents request that this Court initially consider *en banc* whether the Third Circuit Court of Appeals has jurisdiction over this Petition for Writ of *Certiorari*.

/s/ Rhea R. Lawrence
Rhea R. Lawrence, Esquire
Lee J. Rohn, Esquire
Lee J. Rohn and Associates, LLC
Attorneys for Appellee
VI Bar No. 1192
1101 King Street
Christiansted, St. Croix, VI 00820
Telephone: (340) 778-8855
Fax: (340) 773-2954

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on June 15, 2017, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Stephen L. Braga
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road, SL-251
Charlottesville, VA 22903-1789
stevebraga@virginia.edu